## Lloyd's Credit Corporation v. Marlin Management Services, Inc.

[614 A.2d 812]

No. 90-311

Present: **Gibson, Dooley and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed July 2, 1992

Motion for Reargument Denied as Untimely November 18, 1992

 

*David Watts* of *Blodgett, Watts & Volk*, Burlington, for Plaintiff-Appellant.

*Patricia L. Rickard* and *Michael B. Rosenberg* of *Miller, Eggleston & Rosenberg, Ltd.*, Burlington, for Defendant-Appellee.

**Johnson, J.** Plaintiff Lloyd's Credit Corporation appeals from a superior court order holding that a check, written by defendant Marlin Management Services, Inc., and endorsed to Lloyd's Credit by its wholly owned subsidiary, Hansman

McAvoy Co., Inc., was not supported by consideration. We hold that there was consideration and reverse.

In September 1983, Air Vermont, Inc., purchased aircraft flight and liability insurance from Hansman McAvoy, an insurance agent and broker. Lloyd's Credit advanced Hansman McAvoy the money for Air Vermont's insurance premiums. Air Vermont executed a financing agreement promising to pay Hansman McAvoy the money advanced for the premiums, and Hansman McAvoy assigned the financing agreement to Lloyd's Credit. Under the agreement, Lloyd's Credit had the right to cancel the insurance policy at any time for default and, if cancelled, to receive all of the unearned premiums under the policy.

In January of 1984, Hansman McAvoy notified Air Vermont that the insurance coverage on the airline was going to be cancelled for nonpayment of the amount due under the financing agreement. Without flight insurance, Air Vermont would lose its federal license to fly commercially and would be forced to cease operations. Air Vermont's managers met to discuss the airline's financial difficulties. John F. Chapple, president of Marlin Management, a group considering investing in Air Vermont, was present at the meeting. Chapple provided Air Vermont with ten presigned blank checks, drawn on a Marlin account. Air Vermont was to use one check to pay the delinquent insurance payment and the other checks in case of other emergencies, so that the airline could continue operating while Marlin investigated the viability of investing in Air Vermont. On January 26, 1984, one of the presigned checks was issued to Hansman McAvoy to pay the delinquent insurance balance of $16,473. Hansman McAvoy endorsed the check to Lloyd's Credit, which deposited the check.

During the last weekend of January 1984, Chapple met with officers of Air Vermont to discuss further the airline's financial difficulties. At this meeting, a decision was made that Air Vermont should file for bankruptcy, which was done on Monday, January 30, 1984. The bankruptcy court issued a stay prohibiting cancellation of the insurance policy; the stay remained in effect until May 11, 1984.

On the morning of the bankruptcy filing, Chapple stopped payment on the $16,473 check. The check was returned unpaid to Lloyd's Credit. Lloyd's Credit brought this action against Marlin for payment of the check.

The trial court dismissed the case on the merits. It concluded that the check was not a negotiable instrument because it lacked words of negotiability, such as "pay to the order of" or "pay to bearer." 9A V.S.A. § 3104(1). Consequently, Lloyd's Credit could not be a holder in due course of the check, 9A V.S.A. § 3-805, and took the check subject to a defense of failure of consideration. 9A V.S.A. § 3-306(c); *Quazzo v. Quazzo*, 136 Vt. 107, 112, 386 A.2d 638, 641 (1978). The court then held that Lloyd's Credit was not entitled to payment because Marlin received no consideration for the check.

Lloyd's Credit raises four issues on appeal: (1) whether Marlin received or Lloyd's Credit gave consideration for the check, (2) whether Marlin was estopped from raising the defense of failure of consideration, (3) whether there was sufficient evidence to support a finding that Air Vermont's insurance would have been cancelled prior to its bankruptcy if the check had not been issued, and (4) whether Lloyd's Credit was a holder in due course of the check and thus entitled to payment even without consideration. Because we reverse the court's finding of lack of consideration and hold that Lloyd's Credit is entitled to payment of the check from Marlin, we need not reach the other issues.

Marlin argues that there was no consideration for the check because Lloyd's Credit suffered no detriment and Marlin received no benefit in the transaction. It points to two key trial court findings that it contends support its position. First, the court stated that, on the evidence presented, it could not find

> that had Lloyd's Credit Corporation not received the check in question on January 26, 1984 that it would have cancelled Air Vermont's insurance policy prior to the date that Air Vermont filed bankruptcy, which was on January 30, 1984.

It further found that

> although John Chapple expected [Marlin] to receive some benefit from its infusion of money into Air Vermont, Inc., no evidence was presented and the Court cannot find what immediate benefits [Marlin] received. At the time, [Marlin] had taken no equity position in Air Vermont, Inc.

On the basis of these facts, the court concluded, without further explanation, that Marlin received no consideration in exchange

for the check. Marlin asserts that we should apply a clearly erroneous standard to the court's findings and conclusions and affirm. That standard, however, does not apply to the court's conclusion that consideration did not exist.

■ ■ Whether there is consideration for a contract is a question of law, not fact. See, e.g., *Gulden v. Sloan*, 311 N.W.2d 568, 572 (N.D. 1981); *Hargrave v. Canadian Valley Electric Coop.*, 792 P.2d 50, 56 (Okla. 1990); *Pierce v. Plogger*, 223 Va. 116, 120, 286 S.E.2d 207, 210 (1982). Either a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. *Howard National Bank & Trust Co. v. Newman*, 115 Vt. 61, 69, 50 A.2d 896, 901 (1947). Even assuming the trial court's findings are not clearly erroneous, the issue remains whether, as a matter of law, they support a conclusion that there was no consideration. We hold that the court's findings show consideration, manifested by both a detriment to Lloyd's Credit and a benefit to Marlin.

■ The first finding—that even if Lloyd's Credit had not received a check from Marlin on January 26, 1984, it would not have cancelled Air Vermont's insurance before January 30, 1984—is irrelevant to whether consideration existed. Consideration must be evaluated at the time the contract was made. See *Farmer v. Farmer*, 720 P.2d 174, 177 (Colo. Ct. App. 1986); *Bayshore Royal Co. v. Doran Jason Co.*, 480 So. 2d 651, 653 (Fla. Dist. Ct. App. 1985).

■ According to the court's findings, in January 1984, Lloyd's Credit had the right to cancel Air Vermont's insurance and receive all unearned premiums if the airline defaulted on its payments. Air Vermont was notified that the policy was going to be cancelled for nonpayment. On January 26, 1984, Marlin issued a check for $16,473 to Hansman McAvoy, which endorsed it to Lloyd's Credit. The contract came into existence at that time. By writing the check, Marlin promised to pay the money due for insurance in exchange for Lloyd's Credit's forbearance in cancelling the insurance. At the time the contract was made, Lloyd's Credit acted to its detriment by giving up the right to cancel the policy. See 1 Williston on Contracts § 102A, at 382 (3d ed. 1957) ("legal detriment" is not the same as detriment in fact; rather, it means "giving up something which immediately prior

thereto the promisee was privileged to retain"). Whether Lloyd's Credit would gratuitously have chosen not to exercise its right to cancel even without Marlin's check is irrelevant to whether consideration existed at the time the contract was made.

The second finding cited by Marlin—that Marlin received no "immediate benefits" from its actions—is likewise irrelevant to the issue of consideration. Nothing in contract law suggests that the promisor must benefit immediately. To the contrary, a "mere expectation or hope of benefit is sufficient" to serve as consideration. *Affiliated Enterprises v. Waller*, 40 Del. 28, 36, 5 A.2d 257, 260 (1939); see also *Travelers Insurance Co. v. Gebo*, 106 Vt. 155, 163, 170 A. 917, 920 (1934) (husband's expectation that wife would continue to support him and pay expenses related to his illness was consideration supporting his promise to repay her by naming her as beneficiary of his life insurance policy).

The definition of a benefit is extremely broad. Simply put, the promisor must receive something desired for his or her own advantage. 1 Williston, *supra*, § 102A, at 382; see also *Omaha National Bank v. Goddard Realty, Inc.*, 210 Neb. 604, 609, 316 N.W.2d 306, 310 (1982) (consideration is sufficient if promisor perceives it as valuable). Even in commercial transactions, consideration can exist without economic benefit or advantage; a benefit need not be measurable in money. 1 Corbin on Contracts § 121, at 519 (1963). The extent of a benefit is not important; a "very slight advantage" is sufficient to constitute consideration. *Brewer v. First National Bank of Danville*, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961).

Here, the court found that, "at the time Mr. Chapple turned over the checks to Air Vermont, Inc., he and several others investors were investigating the airline to determine whether they would get involved in the ailing company hoping for future profits." That Marlin anticipated future benefits in exchange for the initial investment in Air Vermont was supported by uncontroverted evidence. Chapple testified that at the time he made the investment his intention was "to put Marlin Management in a position to explore the possibility of investing substantially in Air Vermont." Although he was vague and evasive about his

current and anticipated roles in the airline, in response to the question, "But the plan was to invest money for financial return to you?", he answered unequivocally, "Absolutely."

Marlin received benefits from both Lloyd's Credit and Air Vermont. See *Quazzo*, 136 Vt. at 112, 386 A.2d at 641 (consideration may be given by third party instead of promisee); see also Restatement (Second) of Contracts § 71 comment e (1981) ("It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous."). As a potential investor in Air Vermont, Marlin wanted the airline to remain a viable business. Without insurance, Air Vermont could not operate, and its value would surely deteriorate. Lloyd's Credit gave Marlin the means of keeping the airline aloft while negotiating for some financial or ownership interest in it. Air Vermont gave Chapple permission to attend meetings at which the financial condition of the airline was discussed and to take part in decision-making about the company's future. Paying the airline's insurance premium was not a charitable act; it gave Marlin a foothold in the company which it hoped to translate into future profits.

That Air Vermont was unable to work out its financial problems and instead filed for bankruptcy does not render the consideration Marlin received worthless. Once consideration has been found, "courts have traditionally declined to relieve a party from the terms of a contract merely because he made what he regards as a bad or uneven bargain." *Hancock Bank & Trust Co. v. Shell Oil Co.*, 365 Mass. 629, 629, 309 N.E.2d 482, 483 (1974); see also *Hyde v. Shapiro*, 216 Neb. 785, 789, 346 N.W.2d 241, 244 (1984) (agreement made between two sophisticated parties will not be set aside because the consideration ultimately does not prove to be a benefit to the promisor).

Marlin was in the business of providing management services and making investments. It was an experienced commercial player seeking to advance its interests by saving Air Vermont. It took a risk that did not reap the rewards it had hoped for, but it should not, on that account, be relieved from its obligation to pay Lloyd's Credit. As a commercial contract, Marlin's check to Hansman McAvoy, endorsed to Lloyd's Credit, is presumptively valid, *H.P. Hood & Sons v. Heins*, 124 Vt. 331, 336, 205

A.2d 561, 564 (1964), and nothing in the trial court's findings convinces us that the check lacked consideration.

*Reversed and remanded for entry of judgment for plaintiff.*