### Robert and Cecile Bergeron v. Sidney Boyle

[838 A.2d 918]

No. 02-410

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed October 24, 2003

*Heather Rider Hammond* and *Robert F. O'Neill* of *Gravel and Shea,* Burlington, for Plaintiffs-Appellees.

*Michael S. Gawne* of *Brown, Cahill, Gawne & Miller* and *Michael Rose* (On the Brief), St. Albans, for Defendant-Appellant.

¶ 1. **Skoglund, J.** This case concerns a contract for the sale of real estate. Plaintiffs Robert and Cecile Bergeron petitioned the Chittenden Superior Court for specific performance of their agreement with defendant Sidney Boyle to purchase 100 acres of his farm. Following an evidentiary hearing, the trial court determined that the parties entered into a valid, enforceable contract for the purchase and sale of defendant's farm, and granted plaintiffs' petition. The court, however, denied plaintiffs' request for attorney's fees. On appeal, defendant argues that Chittenden County was the improper venue for plaintiffs' action; that he properly revoked his offer to sell the farm prior to plaintiffs' acceptance; and that plaintiffs' consideration was illusory. Plaintiffs cross-appeal, claiming that attorney's fees were available pursuant to the terms of their written agreement. We affirm.

¶ 2. The trial court found the following facts. On July 11, 1999, plaintiffs, in response to a For Sale sign posted on defendant's property, met with defendant at defendant's home and inquired about the available realty. Defendant indicated that he was selling 100 acres of his 150 acre farm in South Hero, Vermont, including a farmhouse and attendant outbuildings, at a price of $180,000. With defendant's guidance, plaintiffs examined the acreage, farmhouse, and outbuildings. During this examination, the parties discussed the subdivision configuration of the lot, as

well as defendant's desire to use the farm's outbuildings for one year to enable sufficient time to move machinery, hay, and other equipment. Plaintiffs also inquired about the zoning regulations affecting the property, and indicated that "in order to close [plaintiffs] wanted to be satisfied through investigation . . . at the Town Clerk's office that there were no problems with the title, encumbrances and liens, and any other legal defects of the property."

¶ 3. After inspecting the property, the parties discussed the price of the farm. Plaintiffs requested a price reduction, but defendant maintained his asking price of $180,000. Plaintiffs agreed to defendant's price and to provide a $5000 deposit, which defendant accepted. Desiring to reduce the terms of their agreement to writing, defendant produced a blank, preprinted form provided to him earlier by a realtor entitled "Purchase and Sale Contract." The Purchase and Sale Contract contains the following preprinted language in clause two: "Purchaser hereby offers and agrees to buy the Property described herein at the price and on the terms and conditions stated herein."

¶ 4. Defendant proceeded to add the necessary information to the preprinted Purchase and Sale Contract. In clause one, defendant handwrote both the plaintiff-purchasers' and defendant-seller's names and addresses; in clause three, defendant identified the time agreed upon by the parties for acceptance as August 11; in clause four, defendant described the real property as "100 acres + — . . . 493 RT 2 South Hero Grand Isle VT"; in clause five, the total purchase price was set at $180,000; and the contract deposit amount of $5000 was noted in clause six. Under clause ten of the agreement, labeled "Special Conditions of Contract," defendant included two specific provisions: first, that "Purchaser will give seller 1 year from closing to move machinery, hay and other personal property off farm," and second, in response to plaintiffs' concern they would forfeit their deposit if defendant was unable to convey marketable title, defendant wrote that "[i]f purchaser revokes offer the $5000.00 deposit will be refunded." Defendant then signed and dated the agreement under the section labeled Acceptance of Offer and Agreement to Sell, which states "Seller hereby accepts Purchaser's offer and agrees to sell the property at the price and upon the terms set forth in this contract and any addenda thereto." Although willing, plaintiffs did not sign the agreement after defendant suggested that their signatures were unnecessary, but did provide defendant with a personal check in the amount of the agreed upon deposit. The parties each kept a copy of the agreement.

¶ 5. On the morning of July 21, defendant told plaintiffs' daughter that he no longer wanted to sell his farm. The next day, defendant met with an attorney, who drafted a letter to plaintiffs, stating in part that "[d]ue to physical and emotional difficulties at this time [defendant] is withdrawing his offer to sell the property. We are, therefore, enclosing your deposit check and apologize for any inconvenience." The trial court determined that defendant's attorney mailed this letter after 4:00 p.m. on July 22. Plaintiffs received this letter on July 23.

¶ 6. In the interim, plaintiffs' daughter had informed her parents of defendant's statement. In response, plaintiffs signed their copy of the Purchase and Sale Contract. Plaintiffs' daughter delivered the signed agreement to defendant on July 22. On July 26, plaintiffs recorded a copy of the signed agreement in the Town Clerk's office. On July 27, plaintiffs' attorney returned the deposit check to defendant's attorney, stating that plaintiffs "had accepted [defendant's] offer at 10:05 a.m. on July 22nd and had delivered a signed copy to [defendant] at 1:22 p.m., before the offer to sell was withdrawn." The attorney also noted that plaintiffs could close on the property within four or five days after receiving notice.

¶ 7. The parties continued to communicate through their attorneys, and unsuccessfully attempted to resolve their dispute through mediation. On August 26, 1999, plaintiffs filed a complaint for declaratory relief, specific performance, and attorney's fees in Chittenden Superior Court. Defendant moved to dismiss based on improper venue, asserting that pursuant to 12 V.S.A. § 402(a), the case should be heard in Grand Isle County, the situs of the property at issue. The court denied this motion, as well as the parties' subsequent cross-motions for summary judgment, finding that the contract at issue was ambiguous as a matter of law. After additional pleadings and discovery, a merits hearing was held in April 2002. The trial court found that the parties had formed a valid, enforceable contract and granted plaintiffs' request for specific performance. The court, however, denied plaintiffs' request for attorney's fees.

¶ 8. Defendant appealed to this Court on September 9, 2002. Plaintiffs filed a cross-appeal on October 15, alleging that they are entitled to attorney's fees under the terms of the Purchase and Sale Contract. Defendant objected to plaintiffs' cross-appeal as untimely. The trial court deemed plaintiffs' failure to timely file their cross-appeal excusable neglect, and allowed the cross-appeal to proceed to this Court. Defendant now asks this Court to determine whether the trial court erred in concluding (1) that venue was proper, (2) that the parties entered into a valid, enforceable contract, and (3) whether plaintiffs are entitled to

appeal the trial court's denial of attorney's fees. We find no error in the trial court's ultimate conclusions.

## I. Venue

¶ 9. The threshold question in this appeal is whether Chittenden Superior Court was the proper venue in which to hear this action. Defendant claims that plaintiffs' contract action seeking specific performance is one "concerning real estate" pursuant to 12 V.S.A. § 402(a), thereby placing proper venue in Grand Isle County, where the property is located. Plaintiffs argue, however, that this is a dispute over contract rights, not real estate. The trial court agreed concluding that "[t]his is a suit about $5,000, not land," and denied defendant's motion to dismiss for improper venue. While we disagree with the court's assessment of the nature of this action, we find that venue was proper in Chittenden County. See *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) (Court may affirm correct judgment on grounds other than those stated by trial court).

¶ 10. Section 402(a) of Title 12 establishes venue for actions in superior court:

> An action before a superior court shall be brought in the county in which one of the parties resides, if either resides in the state; otherwise, on motion, the complaint shall be dismissed. If neither party resides in the state, the action may be brought in any county. Actions concerning real estate shall be brought in the county in which the lands, or some part thereof, lie.

In creating distinct trial venues based on the subject matter of the claim filed, this statute mirrors the common law distinction between local and transitory actions. At common law, "[i]f the cause of action could have arisen in any place whatsoever, it was said to be transitory, and an action thereon might be brought in any county wherein the defendant was found." *Page v. Town of Newbury*, 113 Vt. 336, 338, 34 A.2d 218, 219 (1943). If, on the other hand, "the cause of action could have arisen in one place only, it was local and suit could be brought only where the cause arose." *Id.* This dichotomy parallels that which exists between in personam and in rem jurisdiction. *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506 (7th Cir. 1984) (citing *Mostyn v. Fabrigas*, 1 Cowp. 161, 98 Eng. Rep. 1021 (K.B. 1744)). "The reason for this parallel is simply that, in order to provide *in rem* relief, the court must have jurisdiction over the real property at issue, and a local action must

therefore be brought in the jurisdiction in which that real property is located." *Id.*; see also *Gerdel v. Gerdel*, 132 Vt. 58, 62, 313 A.2d 8, 10 (1973) ("The basic characteristic of an *in rem* action is a competent court passing judgment over the status of some particular subject matter."). To provide in personam relief, however, the court need only have personal jurisdiction over the defendant. *Id.* at 61, 313 A.2d at 9.

■ ¶ 11. Thus § 402(a) maintains the general structure of the common law distinction between local and transitory actions. Today, actions are not local "unless made so by statute." *Page*, 113 Vt. at 338, 34 A.2d at 219. Prior to the Legislature's promulgation of § 402(a) in 1972, the relevant statute controlling venue in the superior court specifically limited local actions to those "of ejectment and actions in tort for trespass on the freehold." 1947 V.S. § 1604; see also 1971, No. 185 (Adj. Sess.), § 31 (codified as 12 V.S.A. § 402(a)); *Page*, 113 Vt. at 338, 34 A.2d at 219 (interpreting 1933 P.L. § 1565, a statutory predecessor of 12 V.S.A. § 402(a), which limited local actions to those for ejectment or trespass on the freehold). Although the "concerning real estate" language currently employed by § 402(a) appears broader than its statutory predecessors and could conceivably encompass any action that, at least in part, relates to real property, such a far-reaching construction is unwarranted.[1] Rather, we have construed § 402(a) narrowly to place venue in the county where the land is located only in actions to "establish or to settle title to real estate." *State v. Fisher*, 134 Vt. 339, 340, 360 A.2d 102, 104 (1976) (district court ejectment action brought under 12 V.S.A. § 4851 not a proceeding to establish or settle title to land and did not implicate "concerning real estate" language of § 402(a)); *Estate of Emilo v. St. Pierre*, 146 Vt. 421, 423, 505 A.2d 664, 665 (1985) (same). Where no party disputes title, real property actions — including those for ejectment — may properly be brought in the county where either party resides. See *Estate of Emilo*, 146 Vt. at 423, 505 A.2d at 665. Therefore, unless an action requires the court to directly establish, quiet, attach, transfer or bestow title to real property, the "concerning real estate" language of § 402(a) does not apply. Cf. 17 Moore's Federal Practice § 110.20[2] (3d ed. 2003) ("[L]ocal actions are those that directly affect real property.").

---

[1] A broad application of § 402(a) is unacceptable. For example, under a broad construction of § 402(a), a plaintiff living in Bennington suing a resident of Brattleboro for the breach of a contract relating to real estate in Newport would be required to file suit in Orleans County. This is an absurd result, and we will avoid a statutory construction producing such results. See *Springfield Terminal Ry. v. Agency of Transp.*, 174 Vt. 341, 348, 816 A.2d 448, 454 (2002); *In re G.T.*, 170 Vt. 507, 517, 758 A.2d 301, 308 (2000) (Court will avoid a statutory construction leading to absurd or irrational results).

■ ¶ 12. Here, plaintiffs' action does not involve a title dispute, but is properly seen as a declaratory judgment action to determine the existence of a contract to transfer land, and to compel specific performance of that contract. While plaintiffs' request for specific performance, if granted, undeniably affects real estate, an action is traditionally considered transitory, and therefore not directly affecting real property if:

> the type of relief requested is personal in nature so that the court acts on the defendant's person or personal property, which is within its control, and not directly on the lands involved. A wide variety of types of actions that affect lands, from the conveyance of real estate to the enforcement of lease provisions, are nonetheless considered transitory actions requiring only in personam jurisdiction over the defendant. Thus, most types of actions are considered transitory even thought the outcome of the litigation may affect property.

17 Moore's Federal Practice § 110.20[2]; *Musicus*, 743 F.2d at 507 (action considered transitory even when "plaintiff seeks a personal judgment which will ultimately affect real property — so long as the action is based in fraud, trust or contract"). Since plaintiffs' request for specific performance is personal in nature — the relief sought would require defendant to fulfill his contractual obligations — their action is transitory despite its effect on real property. Consequently, Chittenden County was a proper venue for plaintiffs' action under 12 V.S.A. § 402(a). Defendant's first claim on appeal fails.

## II. Purchase and Sale Contract

¶ 13. Defendant next contends that the trial court erred in concluding that the parties entered into a contract for the purchase and sale of defendant's farm on July 11, 1999. Specifically, defendant asserts that letters written by attorneys for both parties characterizing their agreement as an "offer to sell" are persuasive evidence that the Purchase and Sale Contract constituted only an offer by defendant. According to defendant, the attorneys' letters are "far superior to potentially falsified testimony in establishing the parties' construction of the [agreement]." Defendant is incorrect.

¶ 14. Generally, construction of a contract is a matter of law. *Housing Vt. v. Goldsmith & Morris*, 165 Vt. 428, 430, 685 A.2d 1086, 1088 (1996). If a court finds a writing ambiguous, however, "the proper interpretation becomes a question of fact, to be determined on all relevant evidence." *New England P'ship v. Rutland City Sch. Dist.*, 173 Vt. 69, 77, 786 A.2d

408, 415 (2001) (internal quotations omitted); *Bixler v. Bullard*, 172 Vt. 53, 58, 769 A.2d 690, 694 (2001) (intent to be bound by contract is question of fact); *Housing Vt.*, 165 Vt. at 430, 685 A.2d at 1088 ("[W]here the meaning of a contract is uncertain, the intent of the parties becomes a question of fact."); see also *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84-85 (1988) (when ambiguity found, "court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms"). In this case, the trial court found the Purchase and Sale Contract ambiguous on its face. The court concluded that:

> [o]n its face, the defendant "accepted" the [plaintiffs'] $180,000 "offer" to buy the property on July 11, 199[9]. But, also, on the contract's face, the [plaintiffs] signed the contract stating the date of the "offer" was on July 22, eleven days after the "acceptance." Furthermore, there was a provision that the "offer" was to remain open until August 11, and another provision which entitled the [plaintiffs] to be refunded their $5000 deposit if they chose to revoke their offer. Again, since the defendant's acceptance apparently occurred as soon as the contract was created, it is unclear what these provisions were meant to accomplish.

¶ 15. After assessing the credibility of witnesses and weighing the evidence presented at the evidentiary hearing, the trial court made findings regarding the ambiguities of the writing. These findings are entitled to substantial deference. *Housing Vt.*, 165 Vt. at 430, 685 A.2d at 1088; *Kannan v. Kannan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995) (trial court is granted wide deference on review because it is in a unique position to assess credibility of witnesses and weight of evidence presented). We will not set aside a trial court's findings unless they are clearly erroneous, nor will we disturb conclusions that are reasonably supported by the findings. V.R.C.P. 52; *New England P'ship*, 173 Vt. at 77, 786 A.2d at 415 (citations omitted).

¶ 16. Specifically, the court found that the parties had negotiated all material terms and intended to be bound by them on July 11. With regard to the ambiguous clause of the agreement stating that "[i]f purchaser revokes offer the $5000.00 will be refunded," the court, after assessing contradictory testimony concerning the intent of this provision, found that the purpose of this clause was to clarify that if plaintiffs discovered defects in title, or any other encumbrances not represented by defendant which would prevent conveyance of marketable title, plaintiffs would not

forfeit their deposit. The court concluded that there was no reliable evidence, including defendant's contrary testimony, suggesting an alternative interpretation of this ambiguous provision.

¶ 17. The court's findings support the conclusion that the Purchase and Sale Contract constituted plaintiffs' offer to purchase 100 acres of defendant's 150 acre farm for $180,000, which defendant accepted and signed on July 11. As a result, plaintiffs created a contract they were entitled to enforce against defendant.[2] See 12 V.S.A. § 181 (under the Statute of Frauds, a contract for the sale of land enforceable if signed by the party to be charged); *Starr Farm Beach Campowners Ass'n v. Boylan*, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002) (mem.) (enforceable contract demonstrates "a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other"). That the attorneys for the parties erroneously characterized the agreement in their subsequent correspondence does not alter this conclusion. See *New England P'ship*, 173 Vt. at 77, 786 A.2d at 415 (trial court's findings upheld even if substantial contradictory evidence exists if credible evidence supports those findings). Defendant's claim therefore fails.[3]

¶ 18. Defendant also avers that the trial court erred in concluding that the parties' agreement was supported by consideration. Defendant argues that because plaintiffs could revoke their offer to purchase the farm according to the terms of the contract — which, if done, would require defendant to return plaintiffs' $5000 deposit — the consideration provided was illusory. Again, defendant is incorrect.

¶ 19. The existence of sufficient consideration for a contract is a question of law and is evaluated at the time the contract was formed. *Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc.*, 158 Vt. 594, 598-99, 614 A.2d 812, 814-15 (1992). "Either a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." *Id.* at 598, 614 A.2d at 814. Mutual promises, " 'in each of which the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of

---

[2] The trial court concluded that the parties entered into an unenforceable oral contract for the conveyance of defendant's real property before defendant produced the Purchase and Sale Contract form from his home. We need not assess the propriety of this conclusion, as the findings support the determination that the parties entered into a valid contract enforceable against defendant when he signed the Purchase and Sale Contract on July 11.

[3] Defendant also asserts that the trial court erred in failing to find his statement to plaintiffs' daughter that he no longer desired to sell the farm an effective revocation of his offer to sell. In light of our determination that defendant accepted plaintiffs' offer to purchase his farm on July 11, his claim that he subsequently revoked an offer to sell fails.

which is void, are sufficient consideration for one another.'" *H.P. Hood & Sons v. Heins,* 124 Vt. 331, 337, 205 A.2d 561, 565 (1964) (quoting 1 Williston on Contracts § 103, at 395-96 (3d ed. 1957)). In this case, the trial court's findings demonstrate that plaintiffs promised to purchase defendant's farm for $180,000 and, in return defendant promised to sell the farm to plaintiffs for that price. This bargained for exchange of mutual promises was sufficient consideration to support the contract. See *Ragosta v. Wilder,* 156 Vt. 390, 393-94, 592 A.2d 367, 369 (1991) (to constitute consideration, a return promise must be bargained for); Restatement (Second) of Contracts § 71(2) (1981) ("A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."). Further, as the trial court noted:

> the giving of . . . [a bank draft for] $5,000.00 amounted to a transfer of the use of funds to [defendant]. The fact that [defendant] had not negotiated the check is irrelevant . . . [plaintiffs] directed their bank to pay him $5000.00 of their money upon demand, and thereby deprived themselves of the use of that money. This by itself is sufficient consideration.

Therefore, defendant's claim that consideration was illusory fails.

### III. Attorney's Fees

¶ 20. Finally, plaintiffs cross-appeal alleging that they are entitled to attorney's fees pursuant to the Purchase and Sale Contract because (1) the contract included an unambiguous provision for reasonable attorney's fees in the event of a breach, and (2) defendant breached the contract. The trial court, which allowed plaintiffs' cross-appeal despite their failure to timely file, denied plaintiffs' request for attorney's fees, finding that their "claim and . . . remedy are entirely equitable in nature, and thus attorney's fees are discretionary with the court." Defendant contends on appeal that plaintiffs are not entitled to attorney's fees because (1) the lower court abused its discretion in allowing plaintiffs to file an untimely cross-appeal, and, irrespective of that error, (2) there was no breach of contract. We find that the trial court abused its discretion in allowing plaintiffs to file an untimely cross-appeal.

¶ 21. On September 9, 2002, defendant filed a notice of appeal. Plaintiffs therefore had fourteen days to file a cross-appeal. See V.R.A.P. 4 ("If a timely notice of appeal is filed by a party, any other party may file and serve a notice of appeal within 14 days . . . ."). This deadline passed, and thereafter, pursuant to Rule 4, plaintiffs filed a motion with the superior

court to extend time. See *id.* ("The superior or district court may extend the time for filing the notice of appeal . . . for excusable neglect, upon motion and notice, if request therefore is made within 30 days after the expiration of the period originally prescribed by this subdivision."). The trial court granted this motion, noting that there was "[n]o harm to defendant, as case already in appeal process and fee issue would not seem to require add'l record . . . all this adds up to reasonable care, no prejudice, excusable neglect. Discretion thereby points to granting motion."

¶ 22. The excusable neglect standard embodied in Rule 4 is a strict one. As we announced in our recent case *In re Town of Killington,* although the standard for excusable neglect has become more of an elastic concept, its application "must remain strict lest there be a de facto enlargement of the appeal-filing time to sixty days." *Killington,* 2003 VT 87A, ¶ 17, 176 Vt. 60, 838 A.2d 98. In *Town of Killington,* we specifically held that the more commonly occurring situations — such as an internal office mistake — do not constitute excusable neglect. *Id.* 2003 VT 87A, at ¶ 19; see also *Gibbons v. United States,* 317 F.3d 852, 855 (8th Cir. 2003) (affirming denial of extension where solo practitioner failed to timely file because of vacation followed by temporary illness). Plaintiffs' excuse that an attorney's vacation and a related breakdown in internal office procedures resulted in the late filing is insufficient to warrant a finding of excusable neglect. Plaintiffs' cross-appeal was untimely and therefore fails.

*Affirmed.*