STATE OF VERMONT

ENVIRONMENTAL COURT

|                                           |     |                            |
|-------------------------------------------|-----|----------------------------|
| In re: Lawson Farms LFO Permit Amendment  | }   | Docket No. 278-12-07 Vtec  |
| (Appeal of Lawson)                        | }   |                            |

Decision and Order on Motion to Dismiss for Lack of Jurisdiction

Appellants George Lawson, Robert Lawson, and Janet Lawson, doing business as Lawson Farms (Lawson Farms), appealed from an order of the Secretary of the Vermont Agency[1] of Agriculture, Food and Markets ('Agency of Agriculture' or 'Agency') that amended the conditions of the Lawson Farms' Large Farm Operation (LFO) Permit. Appellant Lawson Farms is represented by Duncan Frey Kilmartin, Esq.; and the Agency is represented by Michael O. Duane, Esq., Assistant Attorney General.

The Agency has moved to dismiss the appeal, arguing that the Environmental Court lacks subject matter jurisdiction.

Lawson Farms is located in Irasburg; the parties do not dispute that it is of a size to require a Large Farm Operation permit under 6 V.S.A. § 4851(a). Lawson Farms applied for and received a LFO permit in 2002. An appeal of that original issuance of the LFO permit would have been appealable to this court at that time under 6 V.S.A. § 4855. No party appealed, and the 2002 LFO Permit became final. The Agency has not claimed that Lawson Farms failed to comply with its 2002 LFO Permit.

However, after several years of Lawson Farms' operation under the 2002 LFO Permit, the Agency of Agriculture discovered that groundwater in the area of Lawson

---

[1] In 2003, the "Department" of Agriculture was "elevated" to a State "Agency," so that the position of "Commissioner" of the Department became that of "Secretary" of the Agency. 3 V.S.A. § 2350(a).

1

Farms was contaminated with nitrates and that the contamination was likely to be caused by a source other than (or in addition to) the manure pit regulated under the 2002 LFO Permit.

On January 31, 2006, the Secretary of the Agency issued a unilateral order (the 2006 LFO Permit Amendment Order), adopting a hearing officer's findings and conclusions, and amending the conditions of the 2002 LFO Permit pursuant to the authority of LFO Rule[2] 5.3(b)(1).[3]  The 2006 LFO Permit Amendment Order found that the level of nitrates in the groundwater and drinking water in and around the Lawson Farm "substantially exceed[s]" the state and federal safe drinking water standard, and therefore violated the Accepted Agriculture Practices (AAPs).  Although the 2002 LFO Permit conditions could require the manure pit to be upgraded and lined if it was not meeting performance standards, the 2006 LFO Permit Amendment Order determined that the probable source of the nitrate contamination was from a source other than (or in addition to) the manure pit.  The 2006 LFO Permit Amendment Order therefore required Appellants to "actively pursue elucidation and remediation" of the sources of elevated levels of nitrates, and by March 22, 2006 to submit to the Agency a management plan for elimination of groundwater contamination.  The 2006 LFO Permit Amendment Order required the management plan to address at a minimum agricultural field practices, waste storage structures, feed storage structures, and animal housing.

---

[2]  The LFO Rules were amended in 2007; the rules regarding amendments and modifications of LFO permits are now found in subchapter 8, §A.  The references in this decision are to the 1999 LFO Rules unless otherwise noted.

[3]  Finding 2 of the 2006 LFO Permit Amendment Order described this rule as providing "the Secretary with authority to amend an existing LFO permit if it has been determined that waters of the state have not been adequately protected to meet Accepted Agricultural Practices (AAPs)."  The substance of § 5.3(b)(1) of the 1999 LFO Rules, in effect at the time of the filing of this appeal, is now found in § 8(A)(4) of the 2007 LFO Rules.

Appellants initially appealed the 2006 LFO Permit Amendment Order to the Orleans Superior Court under V.R.C.P. 74 or 75, but later sought a ruling that jurisdiction of the appeal was instead with the Environmental Court. In December of 2007, the Orleans Superior Court granted the motion, ruling that the Environmental Court has jurisdiction over this matter because the Agency-initiated amendment to the LFO Permit "effectively put [Appellants] on the same playing field as an initial applicant." Lawson v. Vermont Agency of Agriculture, Docket No. 44-2-06 Oscv, slip op. at 2 (Orleans Super. Ct. Dec. 13, 2007).

Although the Agency did not appeal the superior court decision to the Vermont Supreme Court, it has now moved to dismiss the appeal in Environmental Court, claiming that jurisdiction was properly before the superior court under V.R.C.P. 75 and, essentially, that the appeal should not have been transferred to Environmental Court.

The state statute governing "Agricultural Water Quality," 6 V.S.A. Ch. 215, gives authority to the Agency of Agriculture to protect water quality from pollution by agricultural animal wastes. 6 V.S.A. § 4801. The statute directs the Secretary of the Agency to coordinate with the Agency of Natural Resources (ANR), 6 V.S.A. § 4810(b), regarding discharges to the waters of the state from concentrated animal feeding operations, but otherwise the state regulatory authority over large agricultural operations is with the Agency of Agriculture as laid out in subchapter 4 of Chapter 215, entitled "Regulation of Large Farm Operations." To receive a LFO permit, an applicant must demonstrate that the farm has "an adequately sized manure management system to accommodate the wastes generated" and that it has "a nutrient management plan to dispose of wastes in accordance with accepted agricultural practices adopted under" Chapter 215. 6 V.S.A. § 4851(b).

A "person seeking a permit" who is "aggrieved by a final decision of the secretary" may appeal that decision to the Environmental Court pursuant to 6 V.S.A. § 4855; that

3

appeal is de novo.  Presumably, a permittee who wishes to apply for an amendment to the terms or conditions of a LFO permit may do so, and would thereby be "a person seeking a permit" who would be entitled to appeal the Secretary's final decision regarding the amendment to Environmental Court pursuant to  § 4855. V.R.E.C.P. 5(a)(1).

The issue before the court arises from the language "a person seeking a permit" in § 4855, together with the fact that the statute does not specifically provide for the Agency to initiate a modification or amendment to an existing LFO permit.

The Agency adopted regulations governing large farm operations pursuant to 6 V.S.A. § 4852.  Section 5.3(b) of the 1999 LFO Rules states that the Secretary of the Agency "may decide to amend an existing LFO permit on his or her own initiative," for several reasons, including "a determination by the [Secretary] that waters have not been adequately protected to meet AAPs."   Section 5.3(b)(1) provides that the "permit amendment may include additional measures and limitations and may also include a compliance schedule."

By contrast, § 4854 gives the Secretary other specific authority over LFO permit revocation and over enforcement regarding large farm operations.  Under that section, the secretary may revoke a LFO permit by following the process[4] used to revoke a milk handler's license under 6 V.S.A. § 2705.  Section 4854 also gives the Secretary authority to "seek enforcement remedies" under 6 V.S.A. §§ 1, 12, 13, 16, and 17, as well as to "assess [] administrative penalt[ies]" under 6 V.S.A. § 15, for failure to apply for a required LFO permit or for violation of "the terms and conditions of a [LFO] permit."

The referenced enforcement sections are found in Chapter 1 of the agriculture

---

[4] No statutory revocation process is provided other than the requirement in 6 V.S.A. § 2705 for "due notice and hearing."  In any event, jurisdiction of LFO permit revocation is not assigned by statute to environmental court.  Compare, Act 250 permit revocation. 4 V.S.A. § 1001(b); V.R.E.C.P. 3(1).

statutes and are applicable to all Agency programs, not just to the LFO program. Their terms are analogous to the provisions of the Uniform Environmental Enforcement Act, 10 V.S.A. Chapter 201, available to the ANR. The referenced statutory sections provide authority for injunctive relief, administrative search warrants, assurances of discontinuance, and assessment of administrative monetary penalties. Under this Agency of Agriculture enforcement statute, the filing of assurances of discontinuance and the appeals of orders assessing administrative monetary penalties are in superior court, not environmental court. 6 V.S.A. §§ 13(b), 15(e).

The present case involves neither the failure to apply for a required LFO permit nor the violation of the terms or conditions of a LFO permit. 6 V.S.A. § 4854. Rather, it is an attempted appeal under § 4855 from the Agency's unilateral amendment of the conditions of the 2002 LFO Permit, based on the Agency's findings that the conditions of the 2002 LFO Permit were insufficient to protect the groundwater and drinking water from nitrate contamination.

Had the Agency found that Appellants violated a condition of the 2002 LFO Permit, it would have had authority to take enforcement measures or to revoke the 2002 LFO Permit, pursuant to § 4854, which would result in jurisdiction in superior court. In the present case, the Agency did not seek to enforce a condition of the permit and therefore the enforcement remedies referenced in § 4854 were not available to it.

Rather, the Agency found the 2002 LFO Permit conditions insufficient to protect the groundwater and unilaterally amended the permit accordingly. As much as the original issuance of the 2002 LFO Permit, the 2006 LFO Permit Amendment Order was a final permit decision, appealable to Environmental Court under 6 V.S.A. § 4855, LFO Rule 5(a)–(c); V.R.E.C.P. 5(a)(1).

The Agency argues that the statute is silent regarding an appeal route for the Agency's unilateral amendment of an LFO permit, as distinguished from the clear appeal

5

route for the Agency's issuance of the initial LFO permit, and that the absence of a separate appeal provision for permit amendments forecloses appeal to Environmental Court. The Agency bases this interpretation upon the use of the phrase "person seeking a permit" in the statute. The Agency argues that, while a farm owner is the "person seeking a permit" in the initial permit proceedings (or, presumably, if it is the farm owner who has initiated amendment proceedings), there is no "person seeking a permit" if it is the Agency that unilaterally initiates the amendment.

Such an interpretation would create an absurd result, which courts are cautioned to avoid. Bergeron v. Boyle, 2003 VT 89, ¶ 11, 176 Vt. 78, 83 n.1. Under this interpretation the Agency could initially issue a permit with provisions that were acceptable to and would not be appealed by a permittee, and then would be able unilaterally to amend it without the right of appeal to the court that would have had jurisdiction of a de novo appeal of the initial permit conditions. This interpretation would be contrary to the evident legislative intent to provide for such permits to be reviewed de novo in environmental court. 6 V.S.A. § 4855. Cf. Vincent v. Vt. State Ret. Bd., 148 Vt. 531, 534 n.2 (1987) (court is hesitant to interpret arguably ambiguous legislation as foreclosing judicial review of administrative agency decisions.)

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Agency of Agriculture's Motion to Dismiss is DENIED.

Because this matter was not initially filed in Environmental Court, although Appellant did initially file both a complaint and a statement of questions, and because it has been nearly two-and-a-half years since the contested permit amendment was issued, the Statement of Questions should be amended, both to comply with V.R.E.C.P. 5(f) and

to clarify the questions remaining[5] for this Court's determination. Accordingly, an amended Statement of Questions shall be filed on or before June 17, 2008.

A telephone conference has been scheduled (see enclosed notice) to discuss mediation and to discuss setting this matter for trial. In particular, please also be prepared to discuss whether any supervening changes in circumstances as a practical matter may have affected this litigation, and, if so, whether either party will be requesting a remand. V.R.C.P. 5(i).

Done at Berlin, Vermont, this 16th day of May, 2008.

_____

Merideth Wright
Environmental Judge

---

[5]And see In re Britting Wastewater/Water Supply Permit, Docket No. 259-11-07 Vtec (Vt. Envtl. Ct. April 7, 2008) (discussion of the distinction between constitutionality as applied and constitutionality of regulations on their face).