STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 89-6-14 Vtec |

| Wellarkes VT, LLC | DECISION ON THE MERITS |

The question presented in this appeal is whether Wellarkes VT, LLC (Applicant), the owner of 91 Catamount Drive in the Town of Leicester, Vermont, is entitled to a waiver for the placement of a screened-in porch within the front and side yard setbacks required by the Town of Leicester Zoning Bylaws (the Regulations). Applicant sought a waiver from the Town of Leicester Zoning Board of Adjustment (ZBA) to authorize a small screened-in porch on the back of recently reconstructed residential house. A small triangular portion of the porch encroaches into the side yard setback. Like the entire residence, the entire porch is within the front yard setback. The ZBA's denial of the application resulted in the present appeal.

The Court conducted a site visit on the morning of the merits hearing on April 24, 2015. Appearing at the site visit and trial were Mr. David Weller, a member of Wellarkes VT, LLC, and its attorney Ebenezer Punderson, Esq. and architect Elizabeth Hermann. Also present were two neighboring property owners, Ms. Susan W. Potter and Mr. Eric Houwen, each appearing as self- represented litigants.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1.      Wellarkes VT, LLC (Applicant) owns the 0.2 acre parcel and single family house at 91 Catamount Drive, Leicester, Vermont (Property).

2.      David Weller is a member of the LLC.

3.      The existing house is a recent reconstruction of a former residence.

4.      The existing house is two stories with a basement approximating 1,923 square feet, which is larger than the former house, a single story cottage on concrete footers.

5. The Property is located in the Lake 1 zoning district.

6. The Property is fairly flat and the area of the proposed porch is not on a steep slope.

7. Access to the Property is over a private road shared by other single family homes of similar size.

8. Applicant seeks approval to add a screened-in porch with a sloped roof to the backside of the existing house. The proposed porch is 8.5 feet by 10 feet for a total of 85 square feet. The sloped porch roof is 13 feet at its highest point adjacent to the house and has a shallow slope away from the subject residence to the northeast.

9. The roof of the porch, and of the house, is metal standing seam, which is a common roof material in the area. The porch's wood siding, which matches the siding of the house, is also similar to other porches in the area.

10. The porch is located 22 feet from the Properties' northern boundary, which is shared with the neighboring property owned by the McCulloughs.

11. The house on the McCullough property is located within a few feet of the common boundary with the Property.

12. The house and porch are located entirely within the 75 foot front yard setback from Lake Dunmore (lake side or front yard setback).

13. The porch is proposed on the east or back side of the house, away from Lake Dunmore which lies to the west. A majority of the house is closer to Lake Dunmore than the porch.

14. A triangular portion of approximately 8.9 square feet of the corner of the porch closest to the McCullough property intrudes into the northern side yard setback.

15. Eric Houwen owns the adjacent parcel to the east of the Property. Mr. Houwen has three separate dwellings on his parcel. One located to the northeast, a second to the east, and the third to the southeast.

16. Mr. Houwen's dwelling to the southeast is located fairly close to the shoreline of Lake Dunmore. The proposed porch will not impact view of the lake from this dwelling.

17. Applicant's house is within Mr. Houwen's two other dwellings' views of the lake. Neither Applicant's home nor the proposed porch will block views of the lake from either of these two dwellings.

18. Susan Potter owns a parcel developed with a residence along the Lake Dunmore shoreline opposite from the Property.

19. Ms. Potter also owns a separate undeveloped parcel to the southeast of the Property. This parcel is of higher elevation than the Property.

20. Applicant's home is constructed with a silver standing seam metal roof. At different times of sunny days, due to the direction and pitch of the roof, significant sun glare adversely impacts lake views from Mr. Houwen's dwellings and from Ms. Potter's property on the opposition side of the lake.

21. Due to the proposed location of the porch and the pitch of the porch's roof, the porch roof will not create any additional glare for any of the Houwen or Potter properties.

22. The landscape plantings proposed as part of the porch project soften the visual impact of the porch, but do not materially block any lake views from neighboring properties.

23. Top soil is proposed to be added to the ground surface around the porch and the area will be graded thereby creating the appearance of a harmonious single structure including the existing residence and proposed porch.

## Conclusions of Law

In the appeal before us, the parties do not dispute that the proposed porch is located within the front yard setback and partially within the side yard setbacks. The parties' dispute instead centers on whether the application for an 8.5-foot by 10-foot screened-in porch satisfies § 363(7) of the Regulations regarding waivers of the dimensional setbacks.

The ZBA, and thus this Court on appeal, may grant a waiver approving of a reduced dimensional requirement upon satisfaction of the following standards:

   a. The waiver requested is for a use permitted within the district in question as by right use (as opposed to conditional use.).
   b. The waiver requested is in conformance with the town plan and the goals set forth in Section 4302 of the Act.
   c. The waiver requested is designed to conform to the character of the land use area in which it lies as defined in the Plan and further designed to reasonably limit impact or the potential for impact upon ones neighbors.
   d. The design used incorporates design techniques (restricted height, lack of windows) screening (fencing or plantings) or other remedies to reasonably limit impact or the potential for impact upon ones neighbors.

3

e. The waiver requested accommodates structures providing for disability accessibility, fire safety and other requirements of land or energy conservation or renewable energy structures.

Regulation § 363(7).

Before we analyze each of the above standards in turn, we note that neighbors Mr. Houwen and Ms. Potter offered testimony that Applicant's newly reconstructed house is much bigger and has more impacts then the formerly existing residence. While we are sympathetic to neighbors' concerns of impacts to their property interests, we stress that the matter before the Court is not a consideration of pre-existing non-conformities and whether the porch increases any alleged non-conformities. Such issues have not been raised to the Court and we are bound to limit our review to the issues expressly raised within an appellant's statement of questions.[1] In re Garen, 174 Vt. 151, 156 (2002). We therefore focus specifically on the waiver criteria established by § 363(7) of the Regulations.

**a.** **Permitted Uses in the District**

Section 363(7)(a) of the Regulations requires that the waiver requested is for a use permitted within the district (as opposed to conditional use). The use of the property as a single family dwelling is a permitted use in the Lake 1 District. Regulations § 270(B). Applicant has therefore satisfied § 363(7)(a) of the Regulations.

**b.** **Conformance with Town Plan and Goals of 24 V. S.A. § 4302**

Section 363(7)(b) requires that the waiver requested is in conformance with the town plan and the goals set forth in Section 4302 of the Act. We have previously interpreted similar broad references of zoning regulations requiring compliance with the whole of a town plan through the legal framework established under Criterion 10 of Act 250. See In re Quesnel Waiver Appeal (After Remand), Docket No. 150-10-110 Vtec, slip. op at 6 (Vt. Super. Ct. Envtl. Div. July 2, 2012) (Walsh, J.). Our analysis of whether Applicant's porch complies with the Leicester Town Plan (Town Plan) necessarily begins with a determination of what provisions must be used to test such compliance. Id. at 8. We need only consider those goals and objectives which are mandatory and specific in nature and relate to the proposed development.

---

[1] Similarly, during trial the neighbors raised concerns of adverse impacts to drainage. Again, this issue is not included within the waiver criteria of Section 363(7) of the Regulations. Even if drainage issues were before the Court, Applicant provided evidence to show that the porch would not cause adverse drainage issues, in large part because the porch is elevated on piers and landscaping will stabilize soil and slow run-off.

Id. at 7 (citing Re: J. Flynn Estate and Keystone Dev. Corp., #4C0790-2-EB, Findings of Fact, Concl. of Law, and Order, at 27–28 (Vt. Envtl. Bd. May 4, 2004)). To be enforceable, goals and objectives must apply to and be intended to regulate conduct in the area in which the proposed porch is located and must be sufficiently clear to guide an average person's conduct. Id. "Aspirational language such as 'encourage' or 'promote' merely state a town's desires, and, without more specificity, such language cannot be read as restricting specific activities." Id. If no goal or objective in the Town Plan presents mandatory language, our analysis ends. We therefore first determine whether the Town Plan establishes mandatory, specific goals or objectives to which Applicant's porch must conform.

Neighbors Potter and Houwen suggest that the Town Plan incorporates a 2008 Leicester Lakes Area Pattern Book (Pattern Book), completed by the Leicester Planning Commission, which serves as a measure of the proposed porch's compliance with the Town Plan. We disagree. The Town Plan does not require compliance with the Pattern Book. The Town Plan itself refers to the Pattern Book as a "design guide for developers and property owners in the Lake 1. It suggests ways in which new construction/renovation can reinforce the distinctive, historic character of the Lake District and integrate well into the existing landscape." Town Plan at page 46 (emphasis added). By using the terms "guide" and "suggests," the Town Plan is clear that its reference to the Pattern Book and the recommendations therein are aspirational and not mandatory. The parties did not offer any other areas of the Town Plan as providing mandatory provisions that regulate the proposed porch. Additionally, our review of the Town Plan does not reveal any other policy sections or provisions that apply to the proposed porch at issue in this appeal. Thus, our analysis ends on this criterion.[2]

Next, we conclude that the porch complies with 24 V. S.A. § 4302. Section 4302 expresses the purpose and goals of municipal development generally, establishing several general purposes, including, in pertinent part, "encourage[ing] appropriate architectural design . . . ; protect[ing] residential . . . areas from overcrowding of land and buildings . . . ; [and]

---

[2] In reaching this conclusion we reviewed the Pattern Book. The first 10 to 12 pages of the Pattern Book review the history and existing land uses along the shore of Lake Dunmore. Page 13 sets for "Recommendations for New Building and Construction." Recommendations by their nature are not mandatory, and thus, not regulatory. Even so, during trial Applicant's Architect testified to how she designed the proposed porch to comply with the relevant Pattern Book recommendations. This testimony was persuasive and thus, even if the Court considered the Pattern Book it would determine that the porch complies with the recommendations contained therein.

facilitat[ing] the growth of . . . neighborhoods so as to create an optimum environment . . . ." 24 V. S.A. § 4302(a). Applicant's architect, Ms. Hermann, testified at trial that existing development in the area and along the lakeshore includes single family homes with screened-in porches similar in architectural design to the proposed porch's design. Furthermore, there is no evidence that the porch results in an overcrowding of land or buildings in the neighborhood.

Sections 4302(b) & 4302(c) set forth a variety of goals for municipal development. The porch is a very limited project, and, as such, §§ 4302(b) & (c) are mostly inapplicable.

Accordingly, we conclude that the porch complies with the Town Plan as well as the goals set forth in 24 V.S.A. § 4302. Applicant has thus satisfied § 363(7)(b) of the Regulations.

c.     **Character of the Area from the Town Plan**

Section 363(7)(c) requires that the waiver requested is designed to conform to the character of the land use area in which it lies as defined in the Town Plan and further designed to reasonably limit impact or the potential for impact upon one's neighbors. The Town Plan divides the Town into several land use areas. The subject property is located within the Town Plan's Lake District Area. Town Plan at 45. The Lake District Area is generally described as including the area around Lake Dunmore and Fern Lake and is further divided into two districts: Lake 1 being the 150 feet strip from the mean water level and Lake 2 being 2500 feet from the mean water level. Town Plan at 46. With reference to the Lake District Area, the Town Plan reports that extensive subdivision and construction has taken place in the Lake 1 Area. The Town Plan further acknowledges that small summer camps in the Lake 1 Area have been enlarged and upgraded to year round residence. Both of these facts match the setting and history of the subject property.

The evidence shows that the residence associated with the proposed porch is a recent reconstruction of a smaller residence. Both the residence and the proposed porch fit within the character of the Lake 1 Area. The design of the porch is consistent with other nearby properties in scale, orientation, and setback. The porch is of comparable size, or smaller, when compared to surrounding porches. Most existing porches in the Lake 1 Area are located within front and side yard setbacks. Specifically, the McCulough residence, adjacent to the north of the Property, is within three feet of Applicant's common boundary. In comparison, the proposed porch is 22 feet from that boundary. In keeping with the development pattern in the area, the

6

subject residence is much larger than the proposed porch. Furthermore, the porch's design matches the design of the house to which it will attach. Lastly, the proposed porch is located in a neighborhood of single family homes located in close proximity to one another.

The porch is also designed so as to limit its impact upon the surrounding neighbors. The porch will not have exterior lighting, Applicant has proposed landscaping to soften the porch's aesthetic impacts, and the porch is relatively small in size and of limited height so as to minimize impacts on views of the lake from surrounding properties. Furthermore, most of the surrounding properties in the vicinity of the subject Property include homes with attached porches that also encroach into setbacks. We expand this discussion in the context of § 363(7)(d) below.

Accordingly, the porch conforms to the character of the land use area as defined in the Town Plan and is designed so as to limit its impact on surrounding neighbors. The proposed porch thus complies with Section 363(7)(c).

d.      **Impact on Neighbors**

Section 363(7)(d) requires that the project incorporate design techniques, screening, or other remedies to reasonably limit the impact or the potential for impact upon neighbors. The Court notes that the design of the porch incorporates design techniques and screening to limit the potential for impact on neighbors. The porch is small in scale, a total of 85 square feet. The design does not include any exterior lighting and only a single interior light. Landscaping is proposed to soften the appearance of the porch and to improve the appearance of the shoreline in the area of the porch. Top soil is proposed to be added to the ground surface around the porch and the area will be graded thereby creating the appearance of a harmonious single structure including the existing residence and proposed porch.

In addition to the consideration discussed above, the proposed porch will not impact the views from the houses on Mr. Houwen's property. The Houwen homes lie to the east and southeast of the subject Property, and have primary lake views to the south west. See Exhibit 6 (2(A)&(B). Mr. Houwen's home to the east of the Property has an unimpeded view of the lake to the southwest and to the left of the southern side of Applicant's residence; this view is on the opposite side of Applicant's property from where the porch is proposed to be located. This home has a limited lake view to the west, in the direction of the porch, which is mostly

obstructed by trees. If the propose porch is constructed, this westerly view will include the porch in the foreground; however, the existing trees will continue to mostly obstruct the westerly view of the lake. See Exhibits 5(1)(A) & (B). Although Mr. Houwen suggested at trial that the porch should be located on the lake-side of the subject residence rather than along the northern boundary with the McCullough property, Applicant's architect explained that doing so would further encroach into the lake side setback, which is discouraged by the Regulations and the Pattern Book, and furthermore that the porch's placement was selected as having the least impact on the neighbors overall. Finally, views of the lake from Ms. Potter's properties will not be impacted if the proposed porch is constructed.

In addition to concerns about the impact of the porch on their views, the neighbors raised concerns regarding reflective glare from the porch's roof. Due to the shallow slope and orientation to the east, however, it is not possible that the Houwen or Potter properties will be impacted by glare from the porch roof. We therefore conclude that the proposed porch complies with Regulation § 363(7)(d) as the design incorporates techniques to reasonably limit impacts to or potential impact upon neighbors.

**e.**     **Accommodation for Disability, Fire Safety, or Other Requirements of Land**

Section 363(7)(e) requires that the waiver requested accommodate structures providing for disability accessibility, fire safety, and other requirements of land or energy conservation or renewable energy structures. The parties provided no evidence at trial with respect to this subsection. At the outset, we note that this criterion more commonly applies to public buildings.

In evaluating compliance with this criterion we interpret the Regulation using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted). We will not read zoning regulations in such a way to lead to absurd results. See Bergeron v. Boyle, 2003 VT 89, ¶ 11 n. 1, 176 Vt. 78 (stating that courts should avoid statutory construction that leads to absurd results).

In considering the purpose of 24 V.S.A. § 414(8) and taking a common sense approach to the issue of waivers, we read subsection (e) of Section 363 to be an independent alternative criteria for being awarded a waiver. Failing to satisfy subsection (e) is, therefore, not fatal as long as subsections (a) through (d) are satisfied. It would be an absurd result to interpret the Regulations so that only projects accommodating disability accessibility, fire safety, energy conservation, or renewable energy to qualify for waivers of dimensional requirements.

As concluded above, the proposed porch satisfies Section 363(7)(a) – (d), and therefore, an analysis of § 363(7)(e) is unnecessary.

## Conclusion

For the reasons discussed above, we conclude that Wellarks VT, LLC is entitled to a waiver pursuant to § 363 of the Regulations permitting the encroachment of the small screened-in porch in the front yard setback and partially in the side yard setback. We therefore **GRANT** the application for approval of the screened porch.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Electronically signed on July 15, 2015 at 02:18 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

9