MAR 9 2012
VERMONT



STATE OF VERMONT
SUPERIOR COURT – ENVIRONMENTAL DIVISION

In Re LaFogg Subdivision  }
Final Plat Approval  }

{
{
{

Docket No. 103-7-11 Vtec

## Decision on Cross-Motions for Summary Judgment

David Christie ("Appellant") appeals the Town of Halifax Planning Commission's ("the Commission") approval of Joan and Peter LaFogg's ("Applicants") permit to create a new parcel on their property in the Town of Halifax, Vermont. Currently pending before this Court are the parties' cross-motions for summary judgment concerning whether Applicants' application for a permit to create a new parcel should be approved.

In this proceeding, Appellant is represented by Robin Stern, Esq. Applicants are represented by Christopher D. Roy, Esq. The Town of Halifax filed an appearance in this matter but did not participate in the motions.

### Factual Background

For the sole purpose of putting the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1. Applicants own a 60.18± acre parcel of property in the Town of Halifax, Vermont ("the Town"). Appellant owns land abutting Applicants' property.

2. The current version of the Town of Halifax Zoning Regulations ("the Regulations") was adopted on March 6, 2007. Pursuant to the Regulations, Applicants' property is located in the Conservation District.

3. A single-family residence, constructed in approximately 2002, currently exists on Applicants' property. The residence was constructed prior to the adoption of the current Regulations.

4. Applicants' property has 50 feet of road frontage on Old County Road, a public town road.

5. Applicants seek to create a new parcel on their property so that the property will consist of two separate parcels. Lot 1 will consist of 32.54± acres and will include the 50 feet of road frontage currently existing on Old County Road. Lot 2 will be a "back lot" consisting of 27.63± acres and served by a 50-foot right-of-way.

6.    On April 10, 2011, Applicants submitted an application to the Commission seeking a permit to divide their property and create a new parcel. The Commission approved the application on June 22, 2011.

7.    Appellant thereafter filed a timely appeal of the Commission's decision with this Court.

## Discussion

In his motion for summary judgment, Appellant asks the Court to deny Applicants' request for approval to divide their property into two parcels. In support of his motion, Appellant argues that (1) "[t]he proposed subdivision violates both local and state law"; (2) the proposed property division will increase the nonconformity of Applicants' property; (3) the proposed property division will result in merger of the parcels, thereby resulting in one nonconforming lot; and (4) the applicable provisions of the Regulations conflict with the applicable provisions of 24 V.S.A., Chapter 117.[1]

In their cross-motion, Applicants contend that the Court should approve their application to divide their property into two parcels. In support of their motion, Applicants argue that the Regulations permit division of their property, and, if their property is divided into two lots, Lot 1 will remain a permissible preexisting nonconforming lot under the Regulations and Lot 2 will be a conforming lot under both the Regulations and 24 V.S.A., Chapter 117.

For the reasons detailed below, we conclude as a matter of law that (1) although the property is nonconforming, it can be divided into two lots pursuant to both the Regulations and 24 V.S.A., Chapter 117; (2) the proposed division of Applicants' property will not increase the property's nonconformity because Lot 1 will be a permissible preexisting nonconforming lot and Lot 2 will be a conforming lot under the Regulations and 24 V.S.A., Chapter 117; (3) the Regulations contain sufficient standards regulating the process of property division; (4) the proposed lots will not merge; and (5) the applicable provisions of the Regulations do not conflict with the applicable provisions of 24 V.S.A., Chapter 117.

---

[1] Appellant also argues as part of his motion for summary judgment that the proposed property division will defeat the purpose of the frontage requirements as well as the purpose of the Conservation District. Appellant did not raise this issue in his Statement of Questions, however, and we therefore decline to consider it. See V.R.E.C.P. 5(f) ("The appellant may not raise any question on the appeal not presented in the [statement of questions].").

2

## I.  Summary Judgment Standard

A court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56(c)(3) (2011) (amended Jan. 23, 2012).[2]  In considering the parties' cross-motions for summary judgment, we give each party the benefit of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).  We "accept as true the [factual] allegations made in opposition to [each] motion for summary judgment, so long as they are supported by affidavits or other evidentiary material."  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

## II.  Legality of Property Division Under State and Municipal Law

In his motion for summary judgment, Appellant contends that the division of Applicants' property as proposed "violates both local and state law."  (Appellant's Motion for Summary Judgment 4, filed Nov. 21, 2011).  Specifically, Appellant argues that division of the subject property will increase the property's preexisting nonconformity under the Regulations and will create a new nonconforming lot without the road frontage required by the Regulations and 24 V.S.A., Chapter 117.

Applicants argue in their cross-motion that, if their property is divided, the proposed Lot 1 will remain a preexisting nonconforming lot and the proposed Lot 2 will be a conforming lot under the Regulations and 24 V.S.A., Chapter 117.

We interpret a zoning ordinance using the familiar rules of statutory construction.  In re Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance."  Id.  If the plain language resolves the conflict, "there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent."  Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986); see also In re Hartland Group North Ave. Permit, 2008 VT 92, ¶ 11, 184 Vt. 606 (citing Bergeron v. Boyle, 2003 VT 89, ¶ 11, n.1, 176 Vt. 78, for the proposition that courts will avoid a statutory construction that leads to absurd results).

---

[2]  We note that an updated version of V.R.C.P. 56 took effect on January 23, 2012.  However, we analyze the pending motions under the previous version of the rule because that version was in effect at the time the motions were filed.

The parties do not dispute that Applicants' property is a preexisting nonconforming lot under the Regulations. A preexisting nonconforming lot, which the Regulations simply label a "nonconforming lot," is defined as "[a] lot, the area, dimensions or location of which was lawful under prior zoning regulations, but which fails to conform to the present requirements of the zoning district." Regulations Art. 7. Under the Regulations, the Conservation District, the District in which Applicants' property is located, requires a minimum lot size of 15 acres and minimum road frontage of 500 feet. Regulations § 308(5); Art. 7 (defining "frontage" as the "[d]istance along the established division line between a lot and a public right of way [sic]"). Applicants' property currently encompasses approximately 60 acres, thereby satisfying the District's minimum lot size requirement. Applicants' property has only 50 feet of road frontage on a public right-of-way. The subject property therefore fails to conform to the current frontage requirements of the Conservation District. The lot also predates enactment of zoning regulations in Halifax. As such, Applicant's property is a preexisting "nonconforming lot" under the Regulations.

We turn next to the question of whether the proposed division of Applicants' property to create two lots will increase the property's nonconformity. Pursuant to Section 406 of the Regulations, "nonconforming uses or structures may be continued indefinitely, but shall not be moved, enlarged, altered, extended, reconstructed or restored." The Regulations also provide for certain enumerated exceptions, including a change from one nonconforming use to "another nonconforming use of equal or less intensity." Regulations § 406.

As discussed above, Applicants seek to subdivide their property into two lots. As proposed, Lot 1 will consist of the front 32 acres of the current property, while Lot 2 will consist of the back 27 acres. The back property will be accessed by an existing 50-foot right-of-way. No changes are proposed to the front portion of the property other than reducing its size.

At approximately 32 acres, the proposed Lot 1 will satisfy the Conservation District's 15-acre minimum lot size requirement. See Regulations § 308. Moreover, the subject property's nonconformity with regard to road frontage will remain unchanged because Lot 1 will retain the property's 50 feet of frontage on a public road. Accordingly, the creation of Lot 1 will not increase the nonconformity of Applicants' property.

Nor will the creation of Lot 2 increase the nonconformity of Applicants' property. In his motion for summary judgment, Appellant contends that the creation of Lot 2 is impermissible

4

because it would create an "island lot." (Appellant's Motion for Summary Judgment 8, filed Nov. 21, 2011). In their cross-motion, Applicants argue that the creation of Lot 2 is permissible under the Regulations because it would be a conforming lot. We agree with Applicants.

The Regulations prohibit development on a lot that does not have "either frontage on a public road or . . . access to such a road . . . by a permanent easement." Regulations § 401. Lots that lack frontage on a public road can satisfy this requirement by access via a right-of-way that is at least 50 feet wide. Regulations § 401(1). That is, "[f]rontage requirements for a single lot served by an approved 50 foot right of way [sic] shall be reduced to the width of the right-of-way in all districts." Id.

The plain language of the Regulations, therefore, permits the creation of the proposed Lot 2. Lot 2 will be served by an approved 50-foot right-of-way. Thus, its required road frontage will be reduced to the width of the right-of-way, or 50 feet, and the right-of-way itself will satisfy the frontage requirement. See Regulations § 401(1). Moreover, at approximately 27 acres, Lot 2 will satisfy the minimum lot size requirement of 15 acres. By complying with both the frontage and lot size requirements, Lot 2 will be a conforming lot under the Regulations.

Lot 2 will also be a conforming lot under 24 V.S.A., Chapter 117. Section 4412(3) of Title 24 of the Vermont Statutes Annotated permits land development on lots that do not have road frontage as long as access to the property is provided by a right-of-way of at least 20 feet. Lot 2 will be accessed by a 50-foot right-of-way, and thus will satisfy the requirements of 24 V.S.A. § 4412(3).

Accordingly, Applicants' proposal to divide their property and create a new lot complies with the Regulations. Lot 1 will remain a permissible preexisting nonconforming lot. Lot 2 will be a conforming lot because it satisfies the Regulations' minimum lot size requirements and conforms with the frontage requirements of Section 401(1) of the Regulations and 24 V.S.A. § 4412(3).

This conclusion is made even clearer when we consider what an alternative interpretation of these provisions in the Regulations would mean. The Town explicitly determined that the minimum lot size requirement in the Conservation District is 15 acres. If the Town had wanted to preserve larger lots in the district, it could have done so. It would be unreasonable to interpret the Regulations as prohibiting the division of a 60-acre lot in a district where 15-acre lots are permitted.

5

## III.  Alleged Lack of Standards

In his motion for summary judgment, Appellant contends that the Regulations are devoid of standards regulating the property division review process.  With this argument, Appellant appears to either be challenging the Regulations themselves or contending that such standards are required for a waiver or variance of the road frontage requirements.  We see no merit in Appellant's argument regardless of its intended meaning.

First, the Regulations contain appropriate minimal standards regulating the property division review process.  Pursuant to 24 V.S.A. § 4412(3), a right-of-way may be approved according to standards specified in subdivision bylaws or, "where subdivision bylaws have not been adopted or do not apply, through a process and pursuant to standards defined in bylaws adopted for the purpose of assuring safe and adequate access."  The Vermont Supreme Court has held that regardless of whether a municipality implements subdivision bylaws or instead regulates subdivision using zoning regulations, the subdivision review process "should reflect the application of at least minimal standards to ensure rationality in the planning process."  In re Appeal of Van Nostrand, 2008 VT 77, ¶ 12, 184 Vt. 557 (mem.).

Here, the Town has not implemented subdivision bylaws.  The Town has, however, implemented zoning regulations which regulate property division.  Contrary to Appellant's argument, the Regulations do contain minimal standards to ensure safe and adequate access as required by Appeal of Van Nostrand and 24 V.S.A. § 4412(3).  Section 401(1) of the Regulations requires a minimum of a 50-foot right-of-way.  This is a larger right-of-way than the 20-foot right-of-way required by statute.  See 24 V.S.A. § 4412(3).  Moreover, the Regulations mandate compliance with the Department of Highway Standards B-71 for Residential and Commercial Drives as well as public notice before a right-of-way can be approved.  Regulations § 401(1)(a)-(b).  Accordingly, the Regulations contain minimal standards which "ensure rationality in the planning process."[3]  Appeal of Van Nostrand, 2008 VT 77, ¶ 12.

Second, Appellant did not raise the issue of whether the Regulations contain appropriate standards for a waiver from the frontage requirements within his Statement of Questions.  We

---

[3] Appellant also contends that the Regulations do not contain any of the subdivision standards found in 24 V.SA. § 4418 entitled "Subdivision bylaws."  This section does not control our analysis here because the Town has not adopted subdivision bylaws.  See also 24 V.S.A. § 4412(3) (stating that right-of-way approval must comply with subdivision bylaws when those bylaws were enacted in accordance with 24 V.S.A. § 4418 but omitting any reference to that section when discussing the right-of-way approval process where no subdivision bylaws have been adopted).

therefore are not required to address it. See V.R.E.C.P. 5(f) ("The appellant may not raise any question on the appeal not presented in the [statement of questions]."). It is clear, however, that Applicants' proposed property division does not require a waiver. Appellant argues that 24 V.S.A. § 4414(8) allows a municipality to grant a waiver of dimensional requirements as long as its zoning bylaws contain specific standards regulating the process of granting and appealing waivers. However, 24 V.S.A. § 4414(8) does not apply here because Section 401(1) is not itself a waiver provision but instead is an alternative means by which appropriate road frontage can be obtained.

Moreover, a variance must be sought only when an applicant's proposal would result in a nonconformity with provisions in the municipal zoning regulations. As discussed above, Applicants' proposed property division will not create a nonconformity with the Regulations. Therefore, Applicant is not required to seek a variance.

## IV.    Merger

Appellant contends that, once divided, the new lots will immediately merge. In support of his argument, Appellant relies on Section 400(1) of the Regulations. That provision provides that "[i]f a lot rendered nonconforming by Halifax Zoning Regulations prior to January 1 2005 [sic] subsequently comes under common ownership with one or more contiguous lots, the lot shall be deemed merged." Regulations § 400(1).

The proposed division here would not result in the lots subsequently coming under common ownership because the lots are currently under common ownership as one lot. Therefore, no merger will occur upon division of the lot. Moreover, to hold otherwise would prohibit any subdivision of a preexisting nonconforming lot because the resulting conforming lot would immediately merge with the preexisting nonconforming lot, a result that the Town surely did not intend. See Hartland Group, 2008 VT 92, ¶ 11 (citing Bergeron, 2003 VT 89, ¶ 11, n.1, for the proposition that courts will avoid a statutory construction that leads to absurd results); In re Appeal of Pearl Street Mobile, No. 87-5-99 Vtec, slip op. at 3 (Vt. Envtl. Ct. Feb. 23, 2000) (Wright, J.) ("[T]he zoning ordinance cannot be interpreted to yield an absurd result.").

## V.    Conflicting Provisions

Finally, Appellant contends that 24 V.S.A. §§ 4412(3), 4414(8), and 4418(1) must control our analysis here because they are more restrictive than the related provisions of the Regulations. In the case of conflicting state statutes and municipal regulations, "the more

7

stringent or restrictive regulation applicable shall apply." 24 V.S.A. § 4413(c); see also In re Richards, 174 Vt. 416, 422 (2002) (interpreting a previous version of 24 V.S.A. § 4412(2), formerly codified as 24 V.S.A. § 4406(1)). Here, however, the applicable provisions of 24 V.S.A., Chapter 117 do not conflict with the applicable provisions of the Regulations. They are merely alternatives to each other. As discussed above, Section 401(1) of the Regulations is not a waiver provision, and therefore does not conflict with 24 V.S.A. § 4414(8). The Town has not implemented subdivision bylaws, and therefore 24 V.S.A. § 4418(1) does not apply. Furthermore, even if Section 401(1) of the Regulations did conflict with 24 V.S.A. § 4412(3), and it does not appear that it does, Section 401(1) is more restrictive than 24 V.S.A. § 4412(3) because it requires a 50-foot right-of-way rather than the 20-foot right-of-way required by statute.

## Conclusion

For the reasons detailed above, we **GRANT** Applicants' motion for summary judgment in part, concluding as a matter of law that (1) although the property is nonconforming, it can be divided into two lots pursuant to both the Regulations and 24 V.S.A., Chapter 117; (2) the proposed division of Applicants' property will not increase the property's nonconformity because Lot 1 will be a permissible preexisting nonconforming lot and Lot 2 will be a conforming lot under the Regulations and 24 V.S.A., Chapter 117; (3) the Regulations contain sufficient standards regulating the process of property division; (4) the proposed lots will not merge; and (5) the applicable provisions of the Regulations do not conflict with the applicable provisions of 24 V.S.A., Chapter 117. For these same reasons, we **DENY** Appellant's competing motion for summary judgment.

We cannot, however, grant the full relief that Applicants seek; that is, we cannot yet determine whether they are entitled to a permit to create a new parcel. This Decision answers six of the seven Questions raised by Appellant in his Statement of Questions, Questions 1–6, but the parties did not provide facts or brief the final Question, Question 7, in their cross-motions for summary judgment. Question 7 asks whether Applicants' application for division of their property should be denied because the requisite notice for approval of a right-of-way as required under the Regulations was not provided. The Court will hold a prehearing conference on **March 19, 2012** to determine whether Question 7 will be decided on briefs from the parties or after a hearing. Please see the enclosed notice regarding this prehearing conference.

8

Done at Berlin, Vermont this 9th day of March, 2012.

_____
Thomas G. Walsh,
Environmental Judge