STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 148-11-17 Vtec |

| | |
|---|---|
| The Scott Farm Act 250 | DECISION ON MOTION |

This is an appeal of an Act 250 permit amendment issued on October 6, 2017 to Scott Farm (Farm) by the District 2 Commission (District Commission) for an increased number of events at the Farm. Dan Normandeau appealed the permit amendment on November 3, 2017. Scott Farm subsequently cross-appealed on November 13, 2017.

Presently before the Court are cross motions for summary judgment. Scott Farm moves for partial summary judgment. Mr. Normandeau moves for summary judgement on all issues raised in his Statement of Questions. [1]

Scott Farm is represented by Robin Stern, Esq. Mr. Normandeau is self-represented.

## Standard of Review

Pursuant to V.R.C.P. 56(a), we grant summary judgement to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

## Factual Background

---

[1] We note that Mr. Normandeau's motion for summary judgment with respect to Criterion 8 was not filed in accordance with the Court's January 17, 2018 Scheduling Order. Mr. Normandeau expressed confusion regarding the order, due to comments made during a January 8, 2018 pre-trial conference. This is reflected in a correspondence filed with the Court on January 26, 2018. Because we conclude that further motion practice is required regarding Mr. Normandeau's party status and that there are material facts in dispute regarding the project's compliance with Criterion 8, the timeliness of Mr. Normandeau's motion is irrelevant to our decision regarding Criterion 8.

We recite the following facts solely for the purposes of deciding the pending motions for summary judgement.

1.      Scott Farm is a commercial orchard located on Kipling Road in the Town of Dummerston, Vermont.  The Farm has been in operation since the early 1900s.

2.      On November 23, 2010, the District Commission granted Scott Farm an Act 250 permit to conduct complementary events on a small portion of the Farm (the Original Permit).  Events include educational workshops, such as dry stone walling, conferences, and private parties, including weddings.  Complementary events take place on approximately 3 acres of the Farm property.

3.      In its original application, Scott Farm requested that it be permitted to hold 20 educational programs and up to 10 weddings per year.

4.      The Original Permit placed conditions on the number of events Scott Farm can hold per year based on number of guests.  The permit defines large events as those with a maximum of 120 guests.  Educational programs are those with a maximum of 30 guests.  Scott Farm is permitted to hold 12 large events and 20 educational programs per year.  Large events are permitted to occur a maximum of three weekends per month in June, July, and August.

5.      Events are permitted to occur inside the apple packing barn.  Outdoor tents are permitted, provided there is not music or other significant noise impacts.  Wedding ceremonies are permitted to be held in the orchard itself.

6.      On October 24, 2016, Scott Farm filed an application to increase the number of events held at the Farm and to redefine the size designations of events.  Scott Farm requests that the number of large events be increased from 12 to 14 and educational programs be increased from 20 to 30 annually.  The application also requests that educational programs have a maximum participant count of 32.  Further, Scott Farm requests that a medium event size be created, with maximum of 60 participants, and that it be allowed to hold 15 of these events per year.

7.      On October 6, 2017, the District Commission issued Land Use Permit Amendment #2W1280-1 to Scott Farm (the Amended Permit).

8.      The Amended Permit authorizes Scott Farm to hold 30 educational programs per year, with a maximum participant count of 32, and 15 medium events, with a maximum of 60 participants.  The Amended Permit does not alter the conditions on large events.

9.      The Amended Permit also prohibits wedding ceremonies in the orchard.

10.     The District Commission did not receive any testimony or evidence regarding Criterion 8 and concluded the amended project complies with the criterion.

11.     Mr. Normandeau resides on Kipling Road.  His property is approximately one mile beyond the entrance to Scott Farm.  He is not an abutter nor does his property adjoin Scott Farm.

12.     The District Commission granted Mr. Normandeau final party status under Criteria 1, 5, and 8.

## Discussion

The parties move for summary judgement on two grounds.  First, on Mr. Normandeau's Questions 1 through 4, which address whether Act 250 Rule 34(E) is applicable to the number of events held per year.[2,3]  Second, on whether issues regarding Criterion 8 are properly before the Court.  This second theory supporting Scott Farm's request for summary judgment is more appropriately characterized as a challenge to Mr. Normandeau's standing as an appellant.  Therefore, it should be framed as a motion to dismiss.

### I.     Rule 34(E)

Act 250 Rule 34(E) codifies the Vermont Supreme Court's analysis in In re Stowe Clubs Highlands, which may preclude an applicant from amending conditions in a final and binding Act 250 land use permit.  166 Vt. 33, 38-40 (1996); Act 250 Rules, Rule 34(E).  One of the goals of this limitation is to ensure that the grant of an Act 250 permit is not "merely a prologue to continued applications for permit amendments."  Stowe Club Highlands, 166 Vt. at 39.

When a justification exists for an amendment application, the District Commission, and this Court on appeal, must consider whether the amendments comply with Act 250.  In re Waterfront Park Act 250 Amendment, No. 138-9-14 Vtec, slip op. at 4-5 (Vt. Super. Ct. Envtl. Div.

---

[2] Mr. Normandeau's Questions ask:

Question 1: "[Is] Condition 9 of LUP #2W1280[, which] limit[s] the size and number of events (among other things)[,] . . .  a critical permit condition?"

Question 2: "Does the LUP #2W1280-1 increase in event size, the creation of a new event size category and the addition of 25 more events per year effect a critical permit condition?"

Question 3: "Does any change to the size and cumulative number of events, as well as creating a new event size category, from what is allowed under LUP #2W1280, impact a critical permit condition and also undermine the purpose and intent of Condition 9 of the permit?"

Question 4: "Did the District . . . Commission . . . err with respect to its LUP #2W1280-1 Rule 34(E) ruling, and should the permit amendment application be denied in its entirety under Rule 34(E)(3)?"

[3] Scott Farm asserts that Question 4 addresses alleged errors below outside the scope of this Court's review. However, the Question, and Mr. Normandeau's briefing on the issue, appear to address the larger issue of whether Rule 34(E) prohibits the District Commission, or this Court on appeal, from addressing the merits of Scott Farm's application.  This issue is within the scope of our review.

May 8, 2015) (Walsh, J.) *aff'd by* In re Waterfront Park Act 250 Amendment, 2016 VT 39, 201 Vt. 596. This flexibility reflects the fact that "Act 250 permits are written on paper, not carved in stone, and the relitigation concepts embodied in [Rule] 38(E)(2) cannot be considered to be unconditionally ironclad, as, in some sense, every permit amendment application is a relitigation of an initial permit condition." Re: Dr. Anthony Lapinsky & Dr. Colleen Smith, Nos. 5L1018-4 and 5L0426-9-EB, Findings of Fact, Conclusions of Law, and Order, at 18 (Vt. Envtl. Bd. Oct. 3, 2003).

In determining whether an applicant is entitled to seek an amendment, we employ a three-step analysis. First, we focus on the nature of the permit condition at issue. Specifically, "whether the applicant proposes to amend a permit condition that was included to resolve an issue critical to the issuance of the permit. This determination shall be made on a case-by-case basis." Act 250, Rule 34(E)(1). If the condition was not included to resolve a critical issue, then the applicant is entitled to seek amendment. Id. at Rule 34(E)(1)(a).

If the condition was critical to the issuance of the permit, also referred to as a critical permit condition, we move to the second step of the analysis. Here, we must "consider whether the permitee is merely seeking to religitate the permit condition or to undermine its purpose and intent." Id. at Rule 34(E)(3)(g). If the applicant is only seeking to relitgate or undermine the condition, the analysis ends, and the applicant is not entitled to seek an amendment. If not, we move to the third step in our analysis.

Finally, in determining whether an applicant may seek a permit amendment, we weigh the competing goals of finality and flexibility. We do this by looking to the following list of enumerated factors:

(a) changes in facts, law or regulations beyond the permitee's control;
(b) changes in technology, construction, or operations which necessitate the amendment;
(c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition
(d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;
(e) manifest error on the part of the District Commission, the environmental board, or the environmental court in the issuance of the permit condition; []
(f) the degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by any party, the District Commission, the environmental board, the environmental court, or any other person who has a particularized interest protected by 10 V.S.A. Ch. 151 that may be effected by the proposed amendment[; and]

(g) whether the applicant is merely seeking to relitigate the permit condition or to undermine its purpose and intent.

Act 250, Rule 34(E)(3)(a)-(g). Therefore, the Court will determine on a case by case basis, whether flexibility in the permitting process is warranted or whether finality is needed.

### a. Whether Condition 9 is a critical permit condition.

At issue in this appeal is Condition 9. Condition 9 of the Original Permit states:

> The project shall be limited to twelve large events per year with a maximum of 120 guests. There shall be a maximum of twenty educational programs annually with maximum of 30 participants for each event. Large events are permitted to occur on a maximum of three weeks (a weekend is either a Friday, Saturday, or Sunday) during the month of June, July, and August. This is to ensure that there will not be an event every summer weekend. Events and wedding receptions shall be held in the apple packing barn – tents may also be used if there is not music or other loud noises. Wedding ceremonies may be held in the orchard.

Land Use Permit 2W1280 at 2, filed Feb. 16, 2017 as Exhibit A.[4]

Scott Farm asserts that the educational programs are not a critical permit condition. It asserts that Condition 9 is focused on large events. It asserts that the medium sized events were not considered by the District Commission as part of the original application process and, therefore, cannot be considered a critical permit condition. In support, it points to the District Commission's conclusion that only large events have an adverse effect under Criterion 8. Findings of Fact, Conclusions of Law, and Order, at 7, filed as Exhibit B. Scott Farm also argues that, should the Court conclude the entirety of Condition 9 is a critical permit condition, the need for flexibility outweighs the need for finality.

Mr. Normandeau disagrees, arguing that Condition 9 in its entirety is a critical permit condition. Further, he asserts that Scott Farm is simply relitigating the Original Permit and has offered no justification under Rule 34(E)(2) to permit it to seek an amendment. Mr. Normandeau's argument is based in the requirement that permit may only be conditioned to ensure compliance with statutory criteria. See 10 V.S.A. § 6086(c); In re Stokes Comm'ns. Corp., 164 Vt. 30, 38 (1995) (noting that pursuant to 10 V.S.A. § 6086, "the Board may impose reasonable permit conditions within the limits of its police power to ensure that projects comply with the statutory criteria.") (citations omitted). Therefore, he asserts, that because Condition 9

---

[4] Scott Farm's moves for summary judgement related to educational and medium sized events only. Mr. Normandeau, however, moves for summary judgment on all aspects on Condition 9.

was included, it was required for the events to comply with Act 250. Therefore, Condition 9 is a critical permit condition.

When interpreting Act 250 rules, we apply the familiar principles of statutory construction. In re SP Land Co., LLC, 2001 VT, ¶ 23, 190 Vt. 418 (citation omitted). First, we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the [statute]." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Overall, our goal is to implement the intent of the drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We therefore "adopt a construction that implements the [statute's] legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted). We will avoid a statutory construction that leads to absurd or irrational results. Bergeron v. Boyle, 2003 VT 89, ¶ 11 n. 1, 176 Vt. 78.

To adopt Mr. Normandeau's interpretation of Rule 34(E) would lead to the absurd result that any condition imposed by a District Commission would be critical, despite Rule 34(E) making a clear delineation between critical and non-critical conditions. Further, it would run contrary to the clear intent to provide applicants with the opportunity to amend non-critical permit conditions without an analysis of the Rule 34(E)(3) factors.

We decline, therefore, to adopt Mr. Normandeau's interpretation of Rule 34(E). The Court concludes that a condition is not a critical condition solely by virtue of being imposed by the District Commission.

A condition is critical if, without the condition, the project would not comply with one or more criteria. Act 250, Rule 34(E)(1). Under Criterion 8, a proposed project must not have an undue adverse effect on aesthetics. 10 V.S.A. § 6086(a)(8). The District Commission concluded in the Original Permit that the project would have an adverse impact on aesthetics but, because of limitations placed on the events memorialized in Condition 9, the impacts would not be undue. Exhibit B, p. 6-9. In the absence of these conditions, the project would have an undue adverse impact and not comply with Criterion 8. Therefore, Condition 9, in its entirety, is a critical permit condition.[5]

---

[5] Scott Farm asserts that only large events were concluded to pose a potential adverse impact and, therefore, only the aspect of Condition 9 related to large events could be considered a critical condition. We note, however, that the District Commission included mitigation measures related to educational programs when determining whether the adverse impact would be undue. Id. at p. 9.

For these reasons, we **GRANT** Mr. Normandeau's motion for summary judgment with respect to Questions 1, 2, and 3, concluding that the amendment application relates to a critical permit condition. We **DENY** Scott Farm's motion for summary judgment in these respects.

### b. Whether the Court can reach the merits of Scott Farm's amendment application.

We "consider whether the permitee is merely seeking to religitate the permit condition or to undermine its purpose and intent." Id. at Rule 34(E)(1)(a).

Scott Farm asserts that it is not seeking to relitigate the Original Permit. Instead, it contends that the amendment seeks to reflect Scott Farm's evolved experience hosting complementary activities.

Further, the District Commission stated in the Original Permit that it "will reconvene the hearing in two years to evaluate continued compliance with Criterion 8." Exhibit B, p. 9.[6] Because there was an intent to reevaluate Scott Farm's compliance with Criterion 8 and Condition 9 there is a possibility that any conditions under this criterion is not critical. We conclude that Scott Farm is not seeking to relitigate or undermine the prior permit as the permit itself contemplates this additional review.

The third step in our analysis involves weighing the competing values of flexibility and finality by considering the factors set forth in Rule 34(E)(3).[7]

In 2010, the Town of Dummerston had not enacted a town plan at the time the application was filed. In 2014, Dummerston enacted a town plan that states:

> Increasingly, farmers are finding it necessary to diversify their operations to stay in business. It is important that we encourage this diversity if we want to sustain our farms. One way is to promote farm-related businesses and other non-traditional enterprises to their farming operations. . . . Conditionally permitting additional uses (e.g. recreational and education, retail trade, agricultural services, agri-tourism . . . and the processing and manufacturing of value-added goods) on agricultural properties will benefit farmers by opening new opportunities for them to increase annual income and benefit the town by continuing to preserve undeveloped law and the rural lifestyle.

---

[6] The hearing was not reconvened in two years.

[7] There has been no allegation of manifest error by the District Commission, therefore this factor is not applicable. See Act 250, Rule 34(E)(3)(e).

Further, Scott Farm asserts that their proposal of removing wedding ceremonies from the apple orchard is both a change in operations that necessitate the amendment and an alternative design that provides more efficient means of mitigation. Id. at Rule 34(E)(3)(b)-(c). While we note that the is a change in Scott Farm's understanding of complementary event operations, a self-imposed change in location proposed as a permit condition is not a change in operation that would itself necessitate amendment. We instead consider this to be an alternative design under Rule 34(E)(3)(c).

Dummerston Town Plan adopted February 2014, p. 23, filed as Exhibit H (the Town Plan).

The Town Plan defines agri-tourism as "attracting travelers or visitors to an area or areas used primarily for agricultural purposes (e.g. overnight stays, special events and festivals, recreation activities and events, tourism enhanced direct marketing[, and] education)." Id. at n. 10. It further provides the stated policy of "[e]ncourag[ing] tourism activity that takes advantage of Dummerston's farmland." Id at 69. The policy sets forth the following action steps to further this goal:

a. Encourage adaptive reuse of unique farm buildings for specialized, commercial operations to help preserve them and encourage tourism that is in the character of the neighborhood.

b. . . . [P]romote accessory farm businesses to capitalize on their tourism potential.

Id.

The District Commission was aware that a town plan was going to be enacted after the filing of the application. Exhibit B. at p. 9. The plan was not, however, enacted or enforceable upon the parties at the time of the Original Permit. We therefore conclude that there has been a change in the regulations in the interim period between the Original Permit and the Amended Permit. See Act 250, Rule 34(E)(3)(a).

Further, allowing consideration of the amendment application furthers the adopted Town Plan's stated goals of supporting complementary and accessory farm businesses to capitalize on tourism potential and sustaining local farms. Id. at Rule 34(E)(3)(d). These factors weigh in favor of flexibility in permitting a permit amendment.

Next, we consider if the amendment application presents alternative designs providing for more efficient means to mitigation. Id. at Rule 34(E)(3)(c). Scott Farm proposes to remove wedding ceremonies from the orchard, which is currently permissible under the Original Permit. Exhibit A, p. 2. It asserts this will consolidate traffic to one location, the Farm buildings, and avert traffic from accessing the property from the upper section of Kipling Road, where Mr. Normandeau resides. Finally, Scott Farm proposes to host only one event at a time, which would further reduce impacts resulting from multiple concurrent events.

The amendment application may mitigate impacts to the upper sections of Kipling Road and the surrounding roads that provide access to Scott Farm from that direction. Therefore, with respect to the upper portion of Kipling Road, this proposal favors flexibility. With respect to the lower portion of Kipling Road, this proposal will permit continued traffic. This proposal may also

8

mitigate some of the cumulative impacts of the farm, as it prohibits concurrent events on the property. We conclude that the amendment application weights in favor of flexibility.

We finally turn to parties' reliance upon Condition 9. Act 250, Rule 34(E)(3)(f). Mr. Normandeau asserts that he has heavily relied upon Condition 9 such that it cannot be amended as proposed.[8] He contends that he has relied upon the Original Permit as conditioned to prevent degradation to the character of the area and adverse effects related to the complementary events.

As a property owner in the vicinity of Scott Farm, Mr. Normandeau may be relying upon Condition 9 to mitigate adverse impacts from complementary events at Scott Farm, such as traffic and noise. An increase in the number of events that may be held at the farm has the potential to affect his interest. See In re Waterfront Park Act 250 Amendment, 2016 VT 39, ¶ 29. Therefore, we conclude that while his reliance may be reasonable and a factor in balancing flexibility and finality, it does not defeat consideration of the proposed amendment. Id. 2016 VT 33, ¶ 28.

For the reasons set forth above, we conclude that the factors supporting flexibility in this case outweigh those for finality. Scott Farm only recently began supporting its farming activities with complementary events. These activities clearly further the explicit goals of the Dummerston Town Plan, which was not enacted at the time the Original Permit was issued. Further, Scott Farm has proposed an alternative design to mitigate impacts to the upper section of Kipling Road, where Mr. Normandeau resides, and lessen impacts to the lower portion of Kipling Road. While Mr. Normandeau's reliance upon the prior permit limitations carries some weight, it is outweighed by these factors in the present amendment application.

We **DENY** Mr. Normandeau's motion for summary judgment on Question 3, whether an amendment would impact a critical permit condition and also undermine the intent of Condition 9, and Question 4, should the permit amendment application be denied in its entirety under Rule 34(E)(3), concluding that although Condition 9 is a critical permit condition, we also conclude that Scott Farm is not attempting to relitigate the condition or undermine its purpose or intent, and

---

[8] To the extent that Mr. Normandeau alleges that other individuals have relied upon Condition 9, these allegations are made with respect to third parties not appearing before the Court and Mr. Normandeau has no standing to represent their interests. While other parties were granted final party status before the District Commission, those individuals chose not to appear before this Court. Therefore, a consideration of their reliance is beyond the scope of our review.

that the balancing of flexibility and finality weigh in favor of flexibility.  Thus, we conclude that the amendment application satisfies Rule 34(E) and should be considered on its merits.

As such, Scott Farm's motion is **GRANTED** on Questions 3, and Question 4.

## II.      Criterion 8

We next address the parties' motions related to Criterion 8.  Scott Farm argues that Mr. Normandeau cannot raise issues related to Criterion 8 because he is not an aggrieved person, pursuant to § 8504(a), and did not participate below, pursuant to 10 V.S.A. § 8504(d).  This challenge should be brought before the Court as a motion to dismiss Mr. Normandeau's standing as an appellant.[9]  At times, this Court interprets parties' filings so as prevent the process from getting hung up on form over substance.  See In re Killington Village Master Plan Act 250 Application Appeal, No. 147-10-13 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Aug. 6, 2014) (Durkin, J.).

Here we are concerned that the parties have not clearly identified the issue and standards for Mr. Normandeu's standing.  This is critical because if Mr. Normandeu is without standing as an appellant, then he many participate in the Court's review of Scott Farm's Statement of Questions as an intervenor but would not be permitted to bring his own additional questions. 10. V.S.A. § 8504(n)(4).  This would narrow the scope of our review, as Mr. Normandeau's Questions address the broad issue of whether the amendment complies with Criterion 8, whereas Scott Farm's Questions address the more narrow issue of whether *large* events comply with Act 250.  We decline to attempt to review the parties' motions of summary judgment on Mr. Normandeau's standing at this time because the parties fail to focus on the relevant standing issue(s) and, to the extent the filings touch on this issue, we much give all benefit to the non-movant, and we conclude that material facts are in dispute.  Thus, the remaining portions of the parties' motions for summary judgment are denied.

### Conclusion

For the foregoing reasons, we conclude that Condition 9, in its entirety is a critical permit condition.  Therefore, Mr. Normandeau's motion for summary judgment with respect to Questions 1, 2, and 3, to the extent it addresses whether the amendment application impacts a critical permit condition, is **GRANTED**.  We **DENY** Scott Farm's motion for summary judgment in

---

[9] We note that the District Commission granted Mr. Normandeau final party status under Criteria 1, 5 and 8.  Absent a specific challenge to this party status, Mr. Normandeau retains this standing.

these respects.  We **DENY** Mr. Normandeau's motion for summary judgment on the remaining part of Question 3 and Question 4.  Scott Farm's motion is **GRANTED** on Questions 3, to the extent that it addresses the intent of Condition 9, and Question 4.

Finally, to the extent Scott Farm moves for summary judgment on the proposed amendment's compliance with Criterion 8, the motion is **DENIED**.

Electronically signed on August 06, 2018 at 01:10 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division